# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES PRATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:20CV679 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff James Pratt brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying his claims for disability insurance benefits ("DIB"), a period of disability ("POD"), and supplemental security income ("SSI"). The Court has before it the certified administrative record and cross-motions for judgment.[2]

## I. PROCEDURAL HISTORY

In 2017, Plaintiff filed applications for DIB, a POD, and SSI, alleging a disability onset date of January 16, 2017. (Tr. 15, 263-272.) The applications were denied initially and upon reconsideration. (Tr. 176-186, 196-204.) After a hearing, an Administrative Law Judge ("ALJ") determined on July 18, 2019, that Plaintiff was not disabled under the Act. (Tr. 15-37, 48-103.) The Appeals Council denied a request for review making the ALJ's decision the final decision for purposes of review. (Tr. 1-6.)

---

[1] Kilolo Kijakazi was appointed the Acting Commissioner of Social Security on July 9, 2021 and should therefore be substituted for Andrew M. Saul as Defendant in this suit.

[2] Transcript citations refer to the administrative record filed manually with the Commissioner's answer. (Docket Entry 10.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920.[3]  *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 16, 2017. (Tr. 17.) The ALJ next found the following severe impairments at step

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citation omitted).

2

two: ischemic microangiopathy of the brain with neurocognitive effects, gastroesophageal reflux disease, diverticulitis, obstructive sleep apnea, diabetes mellitus, hypertension, glaucoma, carpal tunnel syndrome, tinnitus, degenerative joint disease of the right upper extremity, depressive disorder, sleep disturbance, and posttraumatic stress disorder. (Tr. 17-18.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (Tr. 18.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform light work

> except with frequent climbing of ramps and stairs, but only occasional climbing of stepladders up to four vertical feet in height, with no climbing of higher ladders or of ropes of scaffolds of any height. He can frequently balance, stoop, kneel, crouch, and crawl. He can frequently reach overhead with the dominant right upper extremity. He can have occasional exposure to vibration, atmospheric conditions, moving mechanical parts and high exposed places. He can have exposure up to and including moderate noise. He can have occasional interactions with supervisors and coworkers, but only superficial and incidental interaction with the public, defined as no more than 1 hour during the workday, with no greater than 10 minutes occurring during any one sustained period of time. He is limited to unskilled work, as defined by SSR 83-10, and cannot perform production pace work on assembly lines. He can tolerate occasional changes to the work setting and the manner and method of performing the assigned work. He must have the ability to wear corrective lenses when performing the assigned work with frequent near and far visual acuity requirements, and with frequent accommodation and field of vision requirements. He can have occasional driving requirements.

3

(Tr. 22.) At the fourth step, the ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 35.) At step five, the ALJ also determined that that were other jobs in the national economy that Plaintiff could perform. (Tr. 36.)

## IV. ISSUES AND ANALYSIS

Plaintiff raises two objections. First, Plaintiff contends that "[t]he ALJ misevaluated the medical opinions of Drs. McLemore, West, and Staten." (Docket Entry 16 at 5.) Second, Plaintiff contends that "[t]he [Appeals Council] erred by failing to evaluate and consider the medical opinion submitted at the [Appeals Council]." (*Id.* at 9.) For the following reasons, these objections lack merit.

### I. Medical Opinions

As noted, Plaintiff first contends that "[t]he ALJ misevaluated the medical opinions of Drs. McLemore, West, and Staten." (Docket Entry 16 at 5.) The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Yet, not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). A treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). When a treating source's medical opinion is not given controlling weight, the ALJ

4

should consider the following factors in deciding what weight to give a medical opinion: (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)(i-vi), 416.927(c)(2)(i-vi). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. The ultimate issue of whether a claimant is disabled is reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

a. **Dr. McLemore**

Dr. Cynthia McLemore, one of Plaintiff's treating physicians, opined that Plaintiff was limited to sedentary activity, lifting and carrying no more than five pounds, with standing/walking on occasion, and only six-to-eight hours of sitting, along with other postural and manipulative limitations. (Tr. 608.) The ALJ evaluated Dr. McLemore's opinion as follows:

> The undersigned gives little weight to[ ] the opinions of his primary care provider, Dr. Mclemore. In March 2017, Dr. Mclemore opined the claimant has severe anxiety and depression and may not be able to work in a gainful employment (13F/19). In May 2017, Dr. Mclemore opined the claimant has multiple problems, which include multiple organ involvement and that "His illness will and do affect his lively hood as he will not be able to perform .. [sic] any work and therefore cannot continue any gainful employment now or in the future.. [sic]"(8F/l). In January 2018, Dr. Mclemore opined the claimant was capable of sedentary activity, but could lift less than 5 pounds, and could only bend 5%, climb 5%, occasionally

5

reach, never kneel, squat, or crawl (15F/3; 29F/15). She also opined he could perform simple grasping, pinching, fine manipulation, power grip and repetitive motion with both upper extremities (l5F/3). However, she noted the claimant was stable physically, and that the claimant asked to be given these limitations secondary to his PTSD (15F/2-3). Dr. Mclemore's opinion is a conclusory [one] and is on an issue ultimately reserved to the Commissioner. More importantly, her opinions are inconsistent with her own treatment records, which show unremarkable physical examinations (E.g., 12F; 13F).

(Tr. 34, 607-608, 589, 474, 1480, 551-602.)

For the following reasons, the ALJ's decision to give Dr. McLemore's opinion "little weight" was both legally correct and supported by substantial evidence. First, the ALJ correctly pointed out that, to the extent Dr. McLemore opined upon an issue reserved to the Commissioner (*i.e.*, that of disability), her opinion should be disregarded. 20 C.F.R. §§ 404.1527(d), 416.927(d). Second, the ALJ also accurately pointed out that Dr. McLemore found Plaintiff to be "stable" and accurately pointed out further that many of the physical limitations Dr. McLemore ultimately adopted were apparently adopted solely on the basis of a request from Plaintiff. (Tr. 34, 607-608.) The ALJ was permitted to reduce the weight he attributed to Dr. McLemore's opinion to the extent it simply restated without support Plaintiff's alleged limitations. *See Comer v. Colvin*, No. 1:16CV199, 2016 WL 7176602, at *7 (M.D.N.C. Dec. 8, 2016) (subjective complaints, without more, do not amount to objective clinical medical evidence).

Third, although the ALJ found that Plaintiff had certain physical impairments in the decision, he accurately noted that they were generally well-controlled. For example, although Plaintiff was diagnosed with diabetes, sleep apnea, and hypertension, they were all well-

6

controlled with medicine. (Tr. 23, 26, 32, 68-69 (Plaintiff testifying that medication helps with his blood pressure), 547 ("Diabetes, under good control with current regimen."), 548 ("Obstructive sleep apnea, apparently fairly well controlled on current treatment."), 548 ("Hypertension, stable on current regimen."), 1687 ("sleeping 5-7 hours, energy intact").) Although Plaintiff testified that he had pain in his shoulder from a degenerative joint disease, he also testified that he used a cream to manage the pain. (Tr. 23, 69-70, *see* Tr. 1349 (noting that diclofenac helped with Plaintiff's joint pain).) Plaintiff also often told his medical providers that he was in no pain. (Tr. 27-28, 717 ("Pain level: 0"), 739, 1229, 1356, 1694, 1736, 1796.) Moreover, an x-ray of Plaintiff's shoulder was unremarkable, except for mild degenerative changes of the AC joint. (Tr. 27, 1725.)

Fourth, as noted by the ALJ (Tr. 32, 34-35, 25-27), Plaintiff's physical examinations were often unremarkable. Plaintiff regularly exhibited full or normal range of motion (Tr. 430, 547, 552, 554, 557, 560, 564, 572, 592, 595, 599); normal muscle tone or bulk (Tr. 552, 554, 557, 560, 564, 572, 592, 595, 599); 5/5 (full) muscle strength (Tr. 553, 557, 560, 564, 573, 592, 599, 1577); and normal gait (Tr. 553, 564, 573, 595, 599, 1018, 1086, 1189 (independent mobility), 1232, 1537, 1580 ("ambulating normally")). These benign clinical findings—a number of which were recorded by Dr. McLemore herself (Tr. 551-603)—supported the RFC finding for a reduced range of light exertional work.

Fifth, Plaintiff's activities of daily living—as cited by the ALJ throughout his decision (*see* Tr. 21, 24, 31-32)—further demonstrated that Plaintiff could perform reduced, light work. For example, Plaintiff admitted that he was able to mow his lawn during part of the

7

alleged period of disability. (Tr. 24, 76, 320, 777 (indicating that yardwork was one of his recreational activities).) Plaintiff also engaged in daily activities consistent with the standing and walking aspects of light work. For example, Plaintiff exercised, including walking and utilizing a stationary bike. (Tr. 29, 32, 487 (Plaintiff "has been doing exercise"), 539 (Plaintiff sometimes rides a stationary bicycle), 490 (advised to continue exercising), 1097, 1687 (Plaintiff was "trying to walk a little more"), 1729 ("Has been looking at trying to exercise more."), *see also* Tr. 1496 ("no exercise intolerance"), 1518, 1536, 1580.) He also travelled interstate, which required sitting, standing, walking, and changing position often.  (Tr. 22, 1091, 1370-71.)

Sixth, in his function report, Plaintiff almost exclusively alleged mental limitations and made minimal notes about physical limitations. (Tr. 318-25, 35 (referencing "statements made by the claimant").) He stated that his impairments did not affect his ability to lift, squat, bend, stand, reach, sit, kneel, climb stairs, or use his hands (Tr. 323), and Plaintiff's friend largely confirmed this (Tr. 35, 334). The only physical limitation he alleged was walking, but he failed to quantify any specific walking limitations. (Tr. 323 ("How far can you walk before needing to stop and rest? [I] don't know.").)

Seventh, the ALJ also considered the opinion of a state agency medical consultant who found that Plaintiff was able to work at a reduced medium exertional level. (Tr. 33, 150-152, 155.) Although the ALJ ultimately found Plaintiff more physically restricted than the state agency consultant did, the state agency consultant was another person who reviewed the record and found Plaintiff far more capable than opined by Dr. McLemore. *See* 20 C.F.R.

8

§§ 404.1513a(b)(1), 416.913a(b)(1) (state agency medical consultants are "highly qualified and experts in Social Security disability evaluation"). All this amounts to substantial evidence in support of the ALJ's decision.

Plaintiff's arguments to the contrary are not persuasive. Plaintiff points to findings by Dr. McLemore that he had a positive Romberg test, tremors, an antalgic gait, and used a cane. (Docket Entry 16 at 6 referencing Tr. 560, 1504-05.) Plaintiff then asserts that this evidence is consistent with other evidence in the record that Plaintiff used a cane.[4] (*Id.* referencing Tr. at 547-548, 752, 1073, 1324, 1352, 1361, 1440.) Nevertheless, the ALJ gave good reasons (described above) for giving Dr. McLemore's opinion little weight. And, as explained further below, the ALJ also gave good reasons for omitting a cane restriction from the RFC.

More specifically, an ALJ is required to consider the impact of "medically required" hand-held assistive devices. SSR 96-9p, 1996 WL 374185, at *7; *see Wimbush v. Astrue*, No. 4:10CV00036, 2011 WL 1743153, at *2-3 (W.D.Va. May 6, 2011). A hand-held assistive device is "medically required" if "medical documentation establish[es] the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96–9p, 1996 WL 374185, at *7. Moreover, a prescription or the lack of a

---

[4] Plaintiff also asserts that the ALJ erred in pointing out that Dr. McLemore described him as "stable," contending that "'stable' does not mean 'improvement' or that the claimant is better." (Docket Entry 16 at 6.) However, even assuming for the sake of argument that Plaintiff is correct here, any error is harmless given all the other reasons the ALJ provided—all of which are discussed above—that warrant discounting Dr. McLemore's opinion. Plaintiff also objects to the ALJ's decision to discount Dr. McLemore's opinion to the extent it addressed the issue of disability itself. (*Id.*) However, as noted earlier, the ultimate issue of whether a claimant is disabled is reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

prescription for an assistive device is not necessarily dispositive of medical necessity. *See Staples v. Astrue*, 329 F. App'x 189, 191-92 (10th Cir. 2009). Thus, under SSR 96-9P, Plaintiff must have presented medical documentation (1) establishing the need for his cane and (2) describing the circumstances for which it is needed. Absent such documentation, an ALJ is not required to include the use of a cane or assistive device in a claimant's RFC.

Here, Plaintiff has not presented the required medical documentation, and even his own testimony is not compelling. Plaintiff testified that his doctor gave him a cane in her office in early 2017 as a precaution because his medication made him dizzy. (Tr. 72-73.) However, as noted by the ALJ, there is no objective medical evidence showing that a cane was prescribed. (Tr. 33.) This Court has found that the lack of prescription may undermine a plaintiff's claim that a cane was required. *See Mullaney v. Colvin*, No. 1:10CV967, 2014 WL 689755, at *6 n.7 (M.D.N.C. Feb. 20, 2014) (agreeing that "the failure of any medical source to prescribe the use of a cane could undermine Plaintiff's need to use one to relieve pain when walking"). Moreover, Plaintiff admitted that he never had any falls where he needed to seek medical treatment (Tr. 33, 74), which again undermines his conclusion that a cane was medically required. And, Plaintiff consistently told doctors that he had no side-effects from his medication, despite now alleging that he was prescribed a cane because of side-effects. (Tr. 33, 1359, 1414, 1687; *see also* Tr. 496, 518, 1084, 1132, 1332, 1448, 1729.)

As Plaintiff's (then) counsel admitted (Tr. 90, 99), while there are some references to Plaintiff using a cane, there are also many medical notes without references to a cane. Specifically, Plaintiff's medical providers repeatedly noted a normal or unremarkable gait.

10

(Tr. 33, 408, 430, 444, 553, 564, 589, 22, 25, 29, 681, 755, 897, 931, 1134, 1232, 1334, 1416, 1450, 1637, 1689, 1731.) In instances where there is considerable conflicting evidence whether a claimant used a cane regularly, other courts have routinely found that a cane was not medically required, even when there was objective medical evidence that the cane was prescribed. *See, e.g.*, *Wimbush*, 2011 WL 1743153, at *3; *Eason v. Astrue*, 2:07-cv-30-FL, 2008 WL 4108084, at *16 (E.D.N.C. 2008). Here, as discussed, no such objective medical evidence compels the conclusion that a cane was prescribed or medically required.

The ALJ's decision also includes a well-supported analysis of Plaintiff's alleged need for a cane, and clearly explains his finding that no limitation was warranted. (Tr. 32-33.) And, despite determining that Plaintiff did not prove that he medically required a cane, the ALJ did include limitations to account for Plaintiff's alleged dizziness:

> [T]he undersigned has accommodated his alleged difficulties with dizziness and balance by limiting him to with frequent climbing of ramps and stairs, but only occasional climbing of stepladders up to four vertical feet in height, with no climbing of higher ladders or of ropes of scaffolds of any height. He can frequently balance, stoop, kneel, crouch, and crawl. He can have occasional exposure to vibration, atmospheric conditions, moving mechanical parts and high exposed places.

(Tr. 32.) As demonstrated above, substantial evidence supports the ALJ's finding that Plaintiff did not medically require a cane, and the ALJ appropriately included other limitations in his RFC determination to account for Plaintiff's alleged dizziness.[5] For these

---

[5] A recent Fourth Circuit case cited by Plaintiff (Docket Entry 16 at 8), *Dowling v. Comm'r of Soc. Sec.*, 986 F.3d 377 (4th Cir 2021), reiterated the principle that deficiencies in a narrative explanation do not necessarily require a remand. *Id.* at 388. The Fourth Circuit in *Dowling* explained that remand would be warranted where there were serious decisional deficiencies, as were present in

reasons, the ALJ's evaluation of Dr. McLemore's opinion and the ALJ's decision to omit an assistive device from the RFC were both legally correct and well-supported.

### b. Dr. West

Plaintiff was also evaluated by Dr. Tracey West, D.O., who concluded that that he could perform a reduced range of sedentary work, could not drive, "need[ed] to be at home under adult supervision at all times," and was "not expected to return to work due to mental health." (Tr. 610.) The ALJ considered Dr. West's medical opinion as follows:

> The undersigned gives little weight to the opinions of Tracey West, DO, who opined in February 2018, the claimant is capable of sedentary activity with occasional postural activities, pushing, pulling, and lifting up to 5 pounds occasionally, performing all upper extremity functions, but cannot drive (16F/2; 29F/10-11). She also noted the claimant needed to be at home under adult supervision at all times and he was not expected to return to work due to mental health (16F/2). The only objective findings she used to support these opinions were "upper GI, CT heat, colonoscopy, blood work" (16F/3). These limitations were extreme and were not supported by his mental health treatment records, which showed generally unremarkable mental status examinations except for depressed and anxious mood. His mental health treatment was also routine and conservative. Her opinions are also not consistent with his normal physical examinations.

(Tr. 34, 610-611, 1475-76.[6])

_____

that case. *Id.* at 388-89. In that case, Ms. Dowling had an anal fissure that made sitting painful, yet the ALJ's disability finding turned on her ability to sit. *Id.* at 388. The ALJ only found Dowling not disabled because, the ALJ concluded, she could perform sedentary (primarily sitting) work activities. *Id.* Dowling's ability to sit, therefore, was both contested and "critically relevant to determining her disability status." *Id.* at 389. Yet, the ALJ never performed a functional assessment regarding the claimant's ability to sit. *Id.* at 388. Here, no analogous set of facts exists. As explained in this Recommendation, the ALJ addressed Plaintiff's alleged need for a cane directly, and thoroughly explained why a cane was not medically required. (Tr. 33.)

[6] The two opinions referenced above appear to be identical.

Here, the ALJ gave good reasons for affording Dr. West's opinion little weight. First, Dr. West's opinion was unsupported and therefore conclusory. *See Brodskiy v. Comm'r of Soc. Sec.*, No. 19-CV-6211-EK, 2021 WL 2685418, at *2 (E.D.N.Y. June 30, 2021) ("An ALJ may discount a treating physician's opinion, however, when it is conclusory, the physician fails to provide objective medical evidence to support the opinion, or the opinion is inconsistent with the record."). Second, Dr. West's extreme limitations were inconsistent with Plaintiff's generally unremarkable physical examinations, discussed in more detail above. (Tr. 32, 34-35, 25-27, 430, 547, 552-54, 557, 560, 564, 572-73, 592, 595, 599, 1577, 1018, 1086, 1189, 1232, 1537, 1580.) Third, Dr. West's extreme limitations were further at odds with Plaintiff's frequently unremarkable mental examinations and the fact that his mental health treatment was routine and conservative. (Tr. 20, 28, 29, 31, 33-34, 486, 779, 1086, 1318, 1334, 1361, 1416, 1689, 1731.) Fourth, Dr. West's extreme limitations were further at odds with Plaintiff's activities of daily living, discussed above. (Tr. 21, 22, 24, 29, 31-32, 76, 320, 777, 487, 490, 1097, 1687, 1729, 1496, 1518, 1536, 1580, 1091, 1370-71.) Fifth, Dr. West's opinion was inconsistent with evidence that Plaintiff's symptoms were well-controlled. (Tr. 23, 26, 27-28, 32, 68-70, 547, 548, 1687, 1349, 717, 739, 1229, 1356, 1694, 1736, 1796, 1725.) For all these reasons, the ALJ's assessment of Dr. West's opinion was legally correct and supported by substantial evidence.

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff contends that the ALJ "cherrypick[ed] evidence" in support of his conclusion and fails to "specify exactly the physical examinations to which he is referring because . . . there are multiple physical

13

examinations in the record that would be supportive of" a limitation to sedentary work. (Docket Entry 16 at 6-7.) For the following reasons this argument is unpersuasive.

More specifically, as demonstrated earlier in this Recommendation, the ALJ gave many good reasons for partially discounting Dr. West's opinions and for concluding that Plaintiff could perform a reduced range of light work. Additionally, the ALJ's decision specifically notes Plaintiff's generally unremarkable physical examinations in, for example, February, March, April, May, and August of 2017. (Tr. 25-26, 564, 566-67, 592, 599, 553.) The ALJ also pointed to Plaintiff's unremarkable physical examination in February and June of 2018. (Tr. 26, 1350, 1318.) And, as explained repeatedly, Plaintiff also demonstrated a wide array of daily activities. (Tr. 21, 22, 24, 29, 31-32, 76, 320, 777, 487, 490, 1097, 1687, 1729, 1496, 1518, 1536, 1580, 1091, 1370-71.) The ALJ's evaluation of Dr. West's opinions is both legally correct and supported by substantial evidence. Plaintiff is, in effect, asking the Court to reweigh the evidence, which this Court will not do. *See Craig v.*, 76 F.3d at 589.[7]

### c. Dr. Staten

Plaintiff was also examined by consultative examiner Dr. Elaine Staten, D.O., who concluded that "[b]ecause of his complaint of hand pain, it would be difficult for him to hold anything more than 5 or 10 pounds while using his cane." (Tr. 548.) Dr. Staten also observed

---

[7] Plaintiff also cites *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (4th Cir. 2020) (Docket Entry 16 at 8) for the principle that the ALJ must consider, when evaluating a medical opinion, the regulatory factors set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, here, the ALJ specifically said he considered those factors. (Tr. 22 ("The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927.").) And, as demonstrated throughout this Recommendation, the ALJ's decision bears this conclusion out. Moreover, Plaintiff has not persuasively demonstrated that the ALJ failed to properly evaluate a particular factor or that such a failure may have impacted the outcome of the ALJ's decision. Plaintiff's conclusory reference to the *Arakas* decision does not warrant a remand.

"a mild limp on the right. He uses a simple cane, but is able to ambulate four feet in the exam room." (Tr. 547.) Dr. Staten also noted a reduced range in Plaintiff's right hip and that his "[t]andem gait [was] unsteady with some balance instability[.]" (Tr. 547, 549.)

The ALJ considered Dr. Staten's opinion as follows:

> The undersigned gives little weight to the opinions of consultative examiner Dr. Staten, who opined the claimant would have difficulty holding anything more than 5 or 10 pounds while using his cane due to complaints of hand pain (11F/5). As discussed in detail above, there is little objective medical evidence to support the claimant requires a cane for ambulation, as there are a great number of references in the record to a normal or unremarkable gait (E.g., 2F/2; 4F/13; 6F/3; 12F/3, 14; 13F/19, 22, 25, 29; 18F/51; 20F/12; 23F/8, 42; 25F/21; 26F/69, 167; 27F/77; 28F/41, 75; 30F/70; 31F/12, 54). His physical examinations have also consistently shown him to have normal strength in his hands and upper extremities. Dr. Staten also did not address his other severe physical impairments.

(Tr. 35, 548, 408, 430, 444, 553, 564, 589, 592, 595, 599, 681, 755, 897, 931, 1134, 1232, 1334, 1416, 1450, 1637, 1689, 1731.)

The ALJ's decision to afford Dr. Staten's opinion little weight is well supported. First, Dr. Staten's reference to hand pain is a restatement of Plaintiff's subjective allegation, not an opinion expressed by Dr. Staten. When read in context, it is evident that the statements under the "Pain Questionnaire" heading were made in response to questions by the doctor:

> Pain Questionnaire: *He states* that he uses a cane whenever he is up and walking. He avoids stairs. He avoids unlevel ground. His cane was prescribed through the VA Medical Center. Because of his complaint of hand pain, it would be difficult for him to hold anything more than 5 or 10 pounds while using his cane.

(Tr. 548 (emphasis added).)

15

Beyond this, and in any event, the ALJ correctly found that Dr. Staten's purported holding and lifting limitations were inconsistent with and unsupported by the longitudinal medical record. This evidence includes Plaintiff's generally unremarkable physical examinations (Tr. 32, 34-35, 25-27, 430, 547, 552-54, 557, 560, 564, 572-73, 592, 595, 599, 1577, 1018, 1086, 1189, 1232, 1537, 1580), his activities of daily living (Tr. 21, 22, 24, 29, 31-32, 76, 320, 777, 487, 490, 1097, 1687, 1729, 1496, 1518, 1536, 1580, 1091, 1370-71), and evidence that his symptoms were well-controlled (Tr. 23, 26, 27-28, 32, 68-70, 547, 548, 1687, 1349, 717, 739, 1229, 1356, 1694, 1736, 1796, 1725).[8] Also, this is not a case where the ALJ simply disregarded Plaintiff's alleged limitation. Here, the ALJ took into account Plaintiff's impairments by fashioning an RFC for a reduced range of light work that included many additional postural, environmental, social, and mental accommodations. (Tr. 22.) For all these reasons, Plaintiff's challenge to the ALJ's evaluation of Dr. Staten's opinion and his entire first objection are unpersuasive.

## II. Appeals Council

Plaintiff next contends that "[t]he [Appeals Council] erred by failing to evaluate and consider the medical opinion submitted at the [Appeals Council]." (Docket Entry 16 at 9.) As explained in greater detail below, this argument has no merit.

---

[8] Plaintiff also contends that "[t]he ALJ . . . seemed to misunderstand Dr. Staten's statements regarding [his] hand pain. Contra the ALJ's assertion that [he] could not be as limited as alleged because his strength was normal, Dr. Staten is carful [sic] to indicate that [his] strength is normal but that his pain is consistent with neuropathy." (Docket Entry 16 at 7 citing Tr. 548.) As explained above, however, the ALJ gave good reasons for affording little weight to the opinions of Drs. McLemore, West, and Staten, including the fact that Plaintiff was able to perform a wide array of activities during the relevant period. Beyond this, Dr. Staten herself found that Plaintiff "appears to have good strength to the hands and good fine finger control." (Tr. 548.) The Court remains unpersuaded by Plaintiff's contention that the ALJ prejudicially erred in evaluating Dr. Staten's opinion.

16

The Appeals Council must consider evidence submitted by a claimant with the request for review if the additional evidence is (1) new, (2) material, and (3) relates to the period on or before the date of the ALJ's decision. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. *See Wilkins*, 953 F.2d at 96. Evidence is material if there is a reasonable probability that the additional evidence would change the outcome of the decision.[9]  20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (2017).

Here, after the ALJ issued his decision, Plaintiff submitted a form from Dr. West dated August 2019. (Tr. 44-46.) It stated that Plaintiff's gait was slow and unsteady and that he had decreased fine motor skills. (Tr. 45-46.)  As a result, Dr. West opined that Plaintiff could not stand for long periods of time, that he was a fall risk, and that he needed an aid (like a cane, brace, crutch, or another person) to walk one block.[10] (*Id.*) The Appeals Council found that the evidence did "not show a reasonable probability that it would change the outcome of the decision," and did not exhibit it. (Tr. 2.)

---

[9] Long-standing Fourth Circuit law defined "material" as a reasonable possibility the new evidence would have changed the outcome of the case. *See Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). However, the new versions of Sections 404.970 and 416.1470 increase a claimant's burden from showing a reasonable possibility to a reasonable probability, and make the obligation to show a reasonable probability of a different outcome an additional requirement to showing materiality.  The new version of the regulation applies here as it was effective January 17, 2017, with compliance by claimants required by May 1, 2017, *see Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90987-01, 90987, 2016 WL 7242991 (Dec. 16, 2016).

[10] Dr. West's August 2019 form indicating that Plaintiff needed an aid to ambulate is not a prescription for a cane (Tr. 46), does not state that Plaintiff required or used cane (*id.*), is inconsistent with Plaintiff's testimony that he used a cane because he got dizzy (Tr. 72-73), and is inconsistent with the longitudinal medical record described throughout this Recommendation.  Thus, to the extent Plaintiff contends that this form undermines the ALJ's finding that a cane was not prescribed or required, he is mistaken.

17

Upon review, the Court concludes that the Appeals Council was correct that there is not a reasonable probability that the August 2019 form from Dr. West would have changed the outcome of the decision.[11] As noted repeatedly, the record reveals generally unremarkable physical examinations (Tr. 32, 34-35, 25-27, 430, 547, 552-54, 557, 560, 564, 572-73, 592, 595, 599, 1577, 1018, 1086, 1189, 1232, 1537, 1580), unremarkable mental examinations (Tr. 20, 28, 29, 31, 33-34, 486, 779, 1086, 1318, 1334, 1361, 1416, 1689, 1731), robust activities of daily living (Tr. 21, 22, 24, 29, 31-32, 76, 320, 777, 487, 490, 1097, 1687, 1729, 1496, 1518, 1536, 1580, 1091, 1370-71), and well-controlled symptoms (Tr. 23, 26, 27-28, 32, 68-70, 547, 548, 1687, 1349, 717, 739, 1229, 1356, 1694, 1736, 1796, 1725).

Nothing in the August 2019 form from Dr. West meaningfully undermines this evidence or compels or suggests a different outcome. Dr. West's form does not document any alleged new impairments that would justify new or different functional limitations. It does not support any of its conclusions with objective medical evidence or citations to other clinical findings. In fact, the functional limitations articulated in the form appear based on Plaintiff's subjective symptoms. (*See, e.g.*, Tr. 46 ("Patient has noted decreased fine motor skills . . ."; "Patient has noted forgetfulness.").) For the above reasons, the Appeals Council correctly

---

[11] Not only was Dr. West's 2019 opinion unlikely to change the outcome of the ALJ's decision, but it was also not "new." In other words, the form is cumulative (*e.g.*, it is not "new" as required by 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5)) of evidence already considered by the ALJ, which was rejected in the face of unremarkable physical findings documented in the longitudinal record, objective medical evidence such as x-rays, and Plaintiff's activities. For example, Plaintiff alleges that the form bolsters opinions that he was limited to sedentary work and required a cane to ambulate. (Docket Entry 16 at 8 and 11.) But—as demonstrated above—these cumulative allegations were already expressly considered by the ALJ and rejected. And again, the August 2019 form does not cite to any new impairment or medical finding that would warrant deviating from the ALJ's decision. Consequently, Plaintiff's contention that the Appeals Council prejudicially erred fails for this reason as well.

18

found that the August 2019 form did not show a reasonable probability that it would change the outcome of the decision. Therefore, the ALJ's decision should be affirmed.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 15) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

October 6, 2021
Durham, North Carolina